RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE  4/10/08
       64

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE- OPELOUSAS DIVISION

| | |
|---|---|
| JAMES A. REED | CIVIL ACTION NO.: CV04-2034 |
| VERSUS | JUDGE HAIK |
| ENSCO OFFSHORE COMPANY | MAGISTRATE JUDGE HILL |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REASONS FOR JUDGMENT

On September 30, 2004, James A. Reed filed a suit under the Jones Act and General Maritime laws for damages resulting from a work related injury. On October 23, 2006, this Court granted defendant's Motion for Judgment as a Matter of Law with respect to the Unseaworthiness and Jones Act claim made by the plaintiff. The Court took under advisement ENSCO's Motion for the dismissal of Reed's claim for additional maintenance and cure and requested briefs.

### A. Facts

James Reed alleges that on or about June 7, 2004, while aiding in the accomplishment of the mission of the *Ensco 81* he was injured while working in a Grocery box owned and utilized by Ensco Offshore Company (hereinafter referred to as "Ensco"). Plaintiff contends that he was in the process of retrieving food stuff in the grocery box which was packed with dry ice. In the course of this work, and due to the formation of condensation on the floor of the box, plaintiff allegedly slipped and torqued his body resulting in injury.

The next day June 9, 2004, Reed left the rig by helicopter. When he arrived in Lafayette, he was taken to Dr. Gregory Gidman by Jude Dana of Ensco. Dr. Gidman evaluated his back

injury and complaints and ordered an MRI which was performed the next day (June 10, 2004) at Laborde Diagnostics, Inc. Mr. Reed never returned to see Dr. Gidman and commenced treatment with Dr. John Cobb on June 23, 2004

At the first appointment with Dr. Cobb, Dr. Cobb opined that the muscular skeletal review of systems was positive for neck pain, back pain, pain down the left leg and lower back stiffness. Dr. Cobb reviewed the MRI which had recently been performed on June 10, 2004, and thought that he had some degeneration of the disc at L4-5 with a high intensity zone with paracentral findings to the left. Dr. Cobb recommended a Medrol dosepak, some pain medication and started Reed off with some physical therapy.

Mr. Reed underwent 18 physical therapy visits between July 7 and August 24, 2004 for low back pain. On or about November 5, 2004, an epidural steroid injection was performed. According to Mr. Reed, the epidural steroid injection helped him with his walking and leg pain.

Mr. Reed returned to Dr. Cobb's office in December of 2004 complaining of neck problems since the injury that would come and go. Dr. Cobb ordered a new MRI taken of Mr. Reed's neck. On March 29, 2005, Mr. Reed underwent the MRI. Dr. Cobb opined that at the C6-7 level there was a demonstration of paracentral disc which could have been giving Reed his symptoms. Dr. Cobb recommended to Reed that the disc could be removed and that the space could be stabilized and gave him a surgical option of an anterior cervical discectomy and fusion at C6-7.

Dr. Cobb never released Mr. Reed from his care. As to physical limitations, Dr. Cobb stated that if Reed did not have the surgery recommended there would be a lot of pain with movement of his neck with restrictions. With the surgery, Dr. Cobb opined that all of the problems that Reed has functionally because of his pain would be reduced.

**JAMES REED'S CONTENTIONS:**

Plaintiff contends that the evidence presented at trial shows that the accident sustained by Mr. Reed on June 7, 2004, was the cause of his back and neck symptoms and conditions that require and anterior cervical discectomy and fusion at the C6-7 level. Plaintiff asserts that Dr. Cobb has rendered an opinion that he has not reached "maximum cure."

Plaintiff further contends that he has met his burden of proving his entitlement to cure. Dr. Cobb has opined that plaintiff had a herniating at the C6-7 level as opposed to a bulge. Plaintiff further asserts that a comparison of cervical MRIs done prior to the accident and the post-accident imaging reveal that prior, he had a normal study and post-accident, a herniated disc. Mr. Reed contends that he never had cervical-related symptoms prior to the June 7, 2004 accident. Dr. Cobb further opined that based on the facts of this accident, the diagnostic tests run, symptoms and history, that the accident was the precipitating cause of his neck problem. Therefore, in line with the broad and inclusive duty imposed in this context, and any doubts as to entitlement, the need for certain medical treatment and the attainment of maximum medical cure to be resolved in favor of the seaman an in favor of payment of Maintenance and Cure, Ensco should be held liable here.

Lastly, plaintiff contends that he is entitled to reasonable costs of food and lodging. At trial, Mr. Reed testified that in 2005 he and his wife physically separated. (They were divorced in early 2006.) At the time of the accident Plaintiff lived with his family at Jefferson Terrace Townhouses. Eventually, Mr. Reed was unable to pay his bills and was financially strapped and got evicted from Jefferson Terrace Townhouses. He was originally paid $20.00 per day in by Ensco. Mr. Reed testified that his monthly rent at the Jefferson Terrace Townhouses was $500.00

with utilities of $150.00 per month. After he was evicted he moved in with his mother at her house in Jeanerette. Mr. Reed testified that he pays the mortgage on his mother's house in the amount of $238.00 and incurs utility bills of $100 to $150 per month. In March 2005, his $20.00 per day maintenance was discontinued. Plaintiff contends that he is entitled to maintenance at the amount of $20.00 per day which should be continuing until he reaches "maximum cure."

Mr. Reed utilizes the following citations in support of his final contention: "A seaman is entitled to the reasonable costs of food and lodging, provided he has incurred the expense." *Hall v. Noble Drilling. Inc.*, 242 F. 3rd 582 (5th Cir. 2001). The burden of producing evidence of expenses is "feather light" and a court may award reasonable expenses, even if the precise amount of actual expenses is not conclusively proved. *Yelverton v. Mobile Laboratories Inc.*, 782 F. 2d 555 (5th Cir. 1986).

### ENSCO OFFSHORE COMPANY'S CONTENTIONS:

Defendant contends that to be entitled to maintenance and cure, Reed has the burden of proving that he suffered an accident or injury aboard ENSCO Rig 81. The award of maintenance and cure is not dependent upon liability or fault being placed on the shipowner, but the seaman does have to prove that he was injured or became ill while in the service of the vessel. In this case, Defendant asserts that the Plaintiff has only pled and presented evidence at trial of one alleged accident or injury, that being an alleged accident/injury which occurred while unloading a grocery box. Further, Plaintiff has not alleged any other injury aboard the rig at any other time or place and has not alleged that he is entitled to maintenance and cure as a result of an illness which manifested itself while in the service of the vessel. Accordingly, if the Court does not find that Reed was injured as alleged, while unloading the grocery box, there is no other claim,

evidence or testimony that he was injured in any other fashion or at any other time.

The Court made a finding of fact in its oral reasons for granting Ensco's Motion for Judgment as a Matter of Law that the overwhelming evidence did not support Reed's claim of an accident or injury while unloading the grocery box. The defense asserts that the Court stated, it would have to believe Reed over all other witnesses who testified at the trial in order to find that an accident occurred as alleged.

The defense contends that during Ensco's investigation into Reed's claim it requested that Dr. Jeffrey Laborde, Radiologist, compare the June 10, 2004 MRI films of Reed's lumbar spine with the lumbar MRI films which he read on May 9, 2001, which were performed in connection with Reed's application for employment with Ensco. Dr. Laborde compared the MRI's and found no changes or differences between the 2001 MRI films and the 2004 films. This comparison study was performed by Dr. Laborde prior to Reed beginning to complain of neck pain.

Ensco further contends that Reed's treatment by Dr. Cobb is as inconsistent as Reed's claims and previous medical exams. Defense notes that it was six (6) months after the alleged accident that Reed began complaining of neck problems. Defense asserts that during the examinations dated December 1, 2004 and March 2, 2005 Dr. Cobb found that Reed had a normal objective cervical and lumbar exam, he was neurologically normal, and it was Dr. Cobb's opinion that he did not think Reed was a surgical candidate. Thereafter, on May 11, 2005, Dr. Cobb offered disc surgery at the C6-7 level and thereafter, on June 28, 2006, he offered surgery at the C3-4 level, no longer at C6-7, as well as lumbar surgery at the L4-5 level, the level which he previously indicated was not surgical and demonstrated: only the same findings as Reed's pre-employment MRI..

Lastly, Ensco contends that it has paid Reed maintenance from June 23, 2004 through March 9, 2005, for a total of $5,200. Defense asserts that this maintenance was paid while giving Reed the benefit of the doubt until Ensco's investigation into his alleged accident could be completed.. Ensco also paid Reed's medical treatment through March 2, 2005 for a total of $8,826.88. Thus, Ensco contends that considering the finding of the Court that Reed was not injured as alleged while unloading the grocery box aboard Rig 81, Ensco's payments of maintenance and cure were not owed and it would be a travesty for Ensco to have to Pay any more maintenance and cure at this time.

## ANALYSIS

A vessel owner is responsible for paying maintenance and cure relative to any injury or illness occurring during a seaman's service. The doctrine of Maintenance and Cure arises from the context of the employment relationship, and not from any negligence or fault on the part of the vessel. *Vaughan v. Atkinson*, 369 U.S. 527 (1962); *Calmar SS Corp. v. Taylor*, 303 U.S. 525 (1938). Although the award of maintenance and cure is not dependent upon liability or fault being placed on the shipowner, the seaman does have to prove that he was injured or became ill while in the service of the vessel. To be entitled to maintenance and cure the petitioner has the burden of proving that he suffered an accident or injury.

The obligation to pay maintenance and cure extends until the seaman has reached a point of "maximum cure." Maximum cure is reached when the seaman's condition is of permanent character and/or will not further improve with additional medical treatment. *Vella v. Ford Motor Company*, 421 U.S. 1 (1975); *Rashidi v. American President Lines*, 96 F. 3rd 124 (5th Cir., 1996).

In the instant matter Reed was allegedly injured on June 7, 2004. Thereafter, Ensco paid maintenance to Reed from the date of his first appointment with Dr. Cobb, June 23, 2004. However, in light of the evidence building during Ensco's investigation into the claim that Reed was not injured aboard Rig 81, it requested that Dr. Jeffrey Laborde, Radiologist, compared the June 10, 2004 MRI films of Reed's lumbar spine with the lumbar MRI films which he read on May 9, 2001, which were performed in connection with Reed's application for employment with Ensco. Dr. Laborde compared the MRI's and found no changes or differences between the 2001 MRI films and the 2004 films. This comparison study was performed by Dr. Laborde prior to Reed beginning to complain of neck pain. Dr. Laborde testified at trial that his reading of the cervical MRI which was performed in May of 2001 also demonstrated the same findings as a cervical MRI which was subsequently performed in March of 2005. Ensco discontinued its maintenance payments to Reed on March 9, 2005, upon receipt of Dr. Laborde's comparative study of the MRI's. Ensco's maintenance payments to Reed total $5,200.00.

Reed has pled and presented evidence at trial of only one alleged accident or injury that being an alleged accident/injury which occurred while unloading a grocery box aboard Rig 81. The plaintiff has not alleged any other injury aboard the rig at any other time or place and has not shown that he is entitled to maintenance and cure as a result of an illness which manifested itself while in the service of the vessel. Accordingly, there can be no proven connection between the alleged accident/ injury and the subsequent neck problems which were complained of six (6) months after the alleged incident.

Considering the foregoing facts this Court finds that Ensco, at the very least, fulfilled all obligations to ensure that its employee was given sufficient medical attention and care including all obligations with respect to maintenance and cure. The Court finds that Plaintiff reached

maximum medical cure no later than March 9, 2005. Although there is evidence suggesting that maximum cure was reached prior to March 9, 2005, the Court is of the opinion that maximum cure was not demonstrated until such date. Accordingly, it is held that no further payments in connection with the June 7, 2004 incident are due to Mr. Reed.

THUS DONE AND SIGNED in Lafayette, Louisiana, on the 10th day of April, 2008.

RICHARD T. HAIK, SR.
U. S. District Judge